702 So.2d 488 (1997)
P.W.G., a child, Petitioner,
v.
STATE of Florida, Respondent.
No. 89446.
Supreme Court of Florida.
December 11, 1997.
*489 Nancy A. Daniels, Public Defender and P. Douglas Brinkmeyer, Assistant Public Defender, Chief, Appellate Intake Division, Second Judicial Circuit, Tallahassee, for Petitioner.
Robert A. Butterworth, Attorney General; James W. Rogers, Tallahassee Bureau Chief, Criminal Appeals; and Stephen R. White, Assistant Attorney General, Tallahassee, for Respondent.
SHAW, Justice.
We have for review P.W.G. v. State, 682 So.2d 1203 (Fla. 1st DCA 1996), which expressly and directly conflicts with the opinion in In re D.D., 564 So.2d 1224 (Fla. 4th DCA 1990). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We approve P.W.G.
Petitioner pled guilty to making a destructive device[1] by mixing "The Works" toilet bowl cleaner and aluminum foil in a plastic bottle. He admitted throwing it under the victim's trailer where it exploded. The trial court considered the predisposition report prepared by the Department of Juvenile Justice, as required by section 39.052, Florida Statutes (1995):
(4) DISPOSITION HEARING FOR DELINQUENCY CASES.When a child has been found to have committed a delinquent act, the following procedures shall be applicable to the disposition of the case:
(a) At the time of the disposition hearing, the court shall consider a predisposition report regarding the suitability of the child for disposition other than by adjudication and commitment to the department. The predisposition report shall be the result of the multidisciplinary assessment when such assessment is needed, and of the classification and placement process, and it shall indicate and report the child's priority needs, recommendations as to a classification of risk for the child in the context of his or her program and supervision needs, and a plan for treatment that recommends the most appropriate placement setting to meet the child's needs with the minimum program security that reasonably ensures public safety....
....
(d) The first determination to be made by the court is a determination of the suitability or nonsuitability for adjudication and commitment of the child to the department. This determination shall be based upon the predisposition report which shall include, whether as part of the child's multidisciplinary assessment, classification, and placement process components or separately, evaluation of the following criteria:
1. The seriousness of the offense to the community.
2. Whether the protection of the community requires adjudication and commitment to the department.
3. Whether the offense was committed in an aggressive, violent, premeditated, or willful manner.
4. Whether the offense was against persons or against property, greater weight being given to offenses against persons, especially if personal injury resulted.
5. The sophistication and maturity of the child.
6. The record and previous criminal history of the child, including without limitations: *490 a. Previous contacts with the department, the Department of Health and Rehabilitative Services, the Department of Corrections, other law enforcement agencies, and courts;

b. Prior periods of probation or community control;

c. Prior adjudications of delinquency; and

d. Prior commitments to institutions.

Id. (emphasis added).
Petitioner was fifteen years old at the time of the offense and the following summarizes his predisposition report:
Appellant was physically and sexually abused during the first four years of his life, while living with his mother and her various boyfriends. At age four, he was removed from his mother's custody, and began receiving mental health treatment. He had been "hospitalized for assaultive behavior, playing with knives and razor blades." He "ha[d] a history of sexually inappropriate language and actions toward females." It was reported that, while residing in Ohio, he had sexually molested his three sisters, all of whom were legally blind. It was also reported that he had subsequently sexually abused a cousin. However, no charges were filed. He had recently been charged with sexual battery. However, that charge was eventually dismissed. "He admitted to suicidal thoughts[,] and stated he tried to kill himself 3 to 4 times by cutting his legs with glass." He had been treated for many years, both by medications and by therapy. He had been seeing a psychiatrist for more than ten years.
According to the predisposition report, appellant had previously been on community control because of an aggravated assault. One of the conditions of that supervision was that appellant participate in mental health counseling for sexual offenders. The counselor reported that appellant had not participated in the program, and had been terminated. He described appellant as "a very dangerous sexual predator," and believed that, if given the opportunity, there was a real possibility that appellant would "reoffend." The counselor had recommended that appellant "be placed in an in-patient facility with a juvenile sex offender's component."
The predisposition report concluded that, given appellant's history, he "could benefit from a residential treatment program that focuses on treatment for sexual offenders," such as Manatee Adolescent Treatment Service. Because such treatment was only available in programs classified as high risk restrictiveness level, the recommendation was that appellant be adjudicated a delinquent child and committed to the Department at such a level.
P.W.G., 682 So.2d at 1204-05 (brackets in original). The trial court adjudicated petitioner delinquent and committed him to the Department of Juvenile Justice for the recommended placement in the Manatee Adolescent Treatment Service.
On appeal, petitioner claimed it was error for the trial court to recommend placement in such a facility because he was not charged with a sexual offense and consideration of prior, uncharged, criminal conduct violated his right to substantive due process of law guaranteed by the state and federal constitutions. The First District Court of Appeal affirmed the trial court's order and held that "delinquency dispositions are not analogous to criminal sentencings" and "the recommended placement does not offend the due process clause of either the state or the federal constitution." P.W.G., 682 So.2d at 1207, 1209. The district court acknowledged that its holding created conflict with In re D.D., 564 So.2d 1224 (Fla. 4th DCA 1990), wherein the Fourth District held that substantive due process prohibits the judge from considering a juvenile's prior arrest record in a juvenile sentencing proceeding. However, the P.W.G. court concluded that "the holding in D.D. resulted from a failure to recognize the fundamental differences between the juvenile delinquency and the adult criminal systems." P.W.G., 682 So.2d at 1208.
Petitioner maintains that the district court's holding is incorrect. We disagree. The district court reasoned thusly:
The courts of this state have long recognized the unique nature of juvenile delinquency *491 proceedings. In State v. Boatman, 329 So.2d 309, 312-13 (Fla.1976), the court said:
Juvenile delinquency proceedings are neither wholly criminal nor civil in nature. The United States Supreme Court has refused to simplistically categorize juvenile proceedings as either "criminal" or "civil," avoiding thereby a "wooden approach." While certain federal constitutional rights obtain in juvenile proceedings, others do not.
(Footnotes [and citations] omitted). In In the Interest of C.J.W., 377 So.2d 22, 24 (Fla.1979), the court rejected an argument made by the appellant child, noting that the argument failed to appreciate "the differences between adults and children and the differences between the objectives of the criminal and juvenile justice systems." The court said:
A child offender, even after being adjudged delinquent, is never held to be a criminal, even if the act would be considered a crime if committed by an adult. The key to this difference in approach lies in the juvenile justice system's ultimate aims. Juveniles are considered to be rehabilitatable. They do not need punishment. Their need lies in the area of treatment. Therefore, while a juvenile whose liberty the state seeks to restrain must be afforded a certain minimum standard of due process, it has never been held that he enjoys the full panoply of procedural rights to which one accused of a crime is entitled.
....
[D]ifferent treatment of minors is permissible because the liberty interest of minors is qualitatively different from that of adults. That interest is subject to reasonable regulation by the state to an extent not permissible with adults. Moreover, that interest is subject to the rights of parents. When the state must remove a child from the parents' custody, either for the child's welfare or for that of the public, the state, in its role as parens patriae, succeeds to the parents' authority to limit the child's freedom of action.
....
Given the different goals of the juvenile delinquency and the adult criminal systems, and the former's emphasis on rehabilitation as the principal means by which to achieve the goal of preventing delinquent children from becoming adult offenders, we believe that it is constitutionally permissible for the trial court to impose whatever treatment plan it concludes is most likely to be effective for a particular child, as long as that plan does not pose a significant threat to the health or well-being of the child. In such a case, the state is doing nothing more than exercising its traditional role as parens patriae. Here appellant does not challenge the accuracy of the information contained in the predisposition report, the need for psycho-sexual therapy and intervention in a residential environment or the suitability of the Manatee Adolescent Treatment Service for that purpose. Accordingly, we conclude that appellant has failed to establish that the recommended placement constitutes an infringement upon any right to substantive due process of law.
P.W.G., 682 So.2d at 1207-08 (citations omitted).
We agree with the analysis and conclusion of the district court. Accordingly, we approve the decision below and remand for proceedings consistent with this opinion. We disapprove In re D.D., 564 So.2d 1224 (Fla. 4th DCA 1990), to the extent it conflicts with our decision herein.
It is so ordered.
KOGAN, C.J., OVERTON, HARDING and WELLS, JJ., and GRIMES, Senior Justice, concur.
ANSTEAD, J., concurs in result only.
NOTES
[1] § 790.161(1), Fla. Stat. (1995) (third-degree felony if committed by an adult).